IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DONALD R. OSWALD,           )
           )
       Plaintiff,        )
           )
     v.            )     CIVIL ACTION NO. 2:08cv898-WC
           )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security,   )
           )
       Defendant.      )

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Plaintiff Donald R. Oswald applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*[1]  His application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied the claims. (Tr. 14-22).  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

---

[1]    Although Plaintiff states that he also filed an application for supplemental security income, Pl.'s Brief (Doc. #12) at 1, there is no indication in the record that Plaintiff submitted such an application.

[2]    Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c),

both parties have consented to the conduct of all proceedings and entry of a final judgment

by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #9);

Def.'s Consent to Jurisdiction (Doc. #10).  Based on the Court's review of the record and the

briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of
> Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next

---

[3]     A "physical or mental impairment" is one resulting from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically acceptable
clinical and laboratory diagnostic techniques.

2

question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or

---

[4]       *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[5]       *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-four years old at the time of the hearing before an ALJ.  Tr. 28.

Plaintiff completed two years of college and served ten years in the U.S. Army.  Tr. 28.

Plaintiff's past relevant work experience included work as a general ledger bookkeeper,

lumber stacker, security guard, stock clerk, and a staff sergeant in the Army.  Tr. 21 & 44-45.

Following the administrative hearing, and employing the five-step process, the ALJ found

Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July

18, 2005 (Step 1).  Tr. 16.  At Step 2, the ALJ found that Plaintiff suffers from the following

severe impairments: "morbid obesity; cervical and lumbar spine degenerative arthritis; left

ankle fracture with arthritis; Depressive Disorder, NOS; intermittent gout; History of heart

disease, status post stent placement; Hypertension (asymptomatic); and sleep apnea."  Tr. 16.

The ALJ then found that Plaintiff "does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments."  (Step 3) Tr. 16.

Next, the ALJ found that Plaintiff retains the RFC to "perform light work with a sit/stand

option" but must avoid "climbing ladders, being around moving and hazardous machinery

or driving commercial motorized vehicles" and "excessive exposure to pulmonary irritants,

dust, odors, fumes, extremes in temperature and humidity."  Tr. 16-17.  The ALJ also found

that Plaintiff "would need a work environment with low stress with routine changes and no

multiple or rapid changes."  Tr. 17.  Given this level of RFC, and after consulting with a

vocational expert, the ALJ determined that Plaintiff "is capable of performing past relevant

work as a general ledger bookkeeper." (Step 4) Tr. 21. The ALJ also found that, based on the testimony of the vocational expert, even if Plaintiff could not return to his past relevant work, there are "a number of jobs within [Plaintiff's] residual functional capacity, and which exist in significant numbers in the regional and national economies" which Plaintiff can perform. Such occupations include: "reception clerk," "telephone solicitor," and "bill sorter." Tr. 22 & 46. Accordingly, the ALJ determined that Plaintiff is not disabled. Tr. 22.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff alleges three errors requiring reversal of the ALJ's decision: (1) the ALJ erred in "finding that Mr. Oswald failed to comply with medical treatment and failing to adequately take his obesity into account and its effects on his medical impairments;" (2) "the ALJ erred by failing to afford any weight to Dr. Patel, Mr. Oswald's treating physician;" and (3) "the ALJ failed to apply the pain standard and failed to accept Mr. Oswald's complaints of pain as true." Pl.'s Brief (Doc. #12) at 6. The Court will address each of Plaintiff's claims in turn.

## V.   DISCUSSION

### A.   The ALJ's treatment of Plaintiff's obesity and asserted finding of failure to comply with prescribed treatment.

Plaintiff argues that, in noting medical opinion evidence that Plaintiff's weight exacerbates his health problems, the ALJ somehow found that Plaintiff has failed to comply with a purported medically prescribed course of losing substantial weight. Pl.'s Brief (Doc.

#12) at 6-7.  Plaintiff also contends that the ALJ "failed to take Mr. Oswald's obesity into account and its effects on his medical impairments."  Pl.'s Brief (Doc. #12) at 8.  Plaintiff then leaps from this argument to a larger claim that the record does not support the ALJ's RFC determination.  Pl.'s Brief (Doc. #12) at 8-10.  Defendant asserts that the ALJ did adequately consider Plaintiff's obesity, that the ALJ did not "improperly consider[] the issue of noncompliance," and that the ALJ's RFC determination is supported by substantial evidence.  Def.'s Brief (Doc. #13) at 7-9.

The Court of Appeals for the Eleventh Circuit has "held that 'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability[.]'" *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)).  However, "[a] physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake such treatment."  *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988).  That is, the Commissioner may not rely simply upon the fact of a claimant's obesity and a prior medical recommendation that the claimant lose weight in order to find that the claimant has failed to comply with prescribed treatment.  Rather, evidence must be "presented suggesting that [the claimant] has refused to follow a plan of prescribed treatment."  *Id.*  Furthermore, there must be evidence that, had the claimant "followed the [prescribed treatment to lose weight], his ability to work would be restored."  *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Here, it is indisputable that Plaintiff has been advised to lose weight. *See, e.g.,* Tr. 240, 244. Plaintiff has also been advised of "his role in maintaining optimum health and his responsibility in the health care process" and has "voice[d] [his] understanding and his intent to actively participate in this process." Tr. 238. However, there is no clear evidence in the record that Plaintiff has refused to undertake a specific and prescribed course of treatment in order to lose weight. Thus, the record is not sufficiently factually developed in order to determine whether Plaintiff may be denied disability status due to a failure to comply with prescribed treatment.

However, it is also apparent from the record that the ALJ's finding that Plaintiff is not disabled is not predicated on a finding that Plaintiff failed to comply with prescribed treatment. There is no explicit statement in the ALJ's opinion conveying such a finding. Rather, Plaintiff asserts that the ALJ implicitly made such a finding in giving "substantial weight" to Dr. Anderson's testimony at the hearing. Pl.'s Brief (Doc. #12) at 7. At the hearing, Dr. Anderson testified as follows:

> The records that we have, including the consultation evaluation, would suggest this gentleman would be - would not meet the Secretary's listing for disability. The amount of pathology demonstrated with special emphasis on his obesity would limit him to light work activity with a sit/stand option and/or sedentary work. If he were to become compliant with medical care, those limitations would be decreased.

Tr. 43. It is clear that Dr. Anderson simply stated that Plaintiff is not disabled, even considering his obesity, and that, should Plaintiff eventually comply with medical advice to

8

lose weight, his limitations would be even less than the non-disabling limitations discussed by Dr. Anderson.  While Dr. Anderson characterized Plaintiff's failure to lose weight in terms of compliance, it is unreasonable to expect that Dr. Anderson appreciated the meaning that phrase, as a legal term of art, might be imbued with in disability proceedings.  Given the clear meaning and intent of Dr. Anderson's testimony and the absence of any discussion of "noncompliance" in the ALJ's opinion, the Court holds that the ALJ did not implicitly refuse to find Plaintiff disabled based on his purported noncompliance with prescribed treatment.

Plaintiff's contention that the ALJ failed to adequately consider his obesity is also without merit.  Plaintiff's argument is curious - despite the ALJ's explicit listing of Plaintiff's obesity as a severe impairment, he surmises that the ALJ failed to "take [Plaintiff's] obesity into account when calculating his RFC" as evidenced by his reliance on Dr. Anderson's testimony.  Plaintiff states, "Dr. Anderson's testimony acknowledges that Mr. Oswald may not be able to fulfill the physical requirements associated with 'light' work activity."  Pl.'s Brief (Doc. #12) at 8.  For Plaintiff, Dr. Anderson's testimony "could easily be read that [Plaintiff] is capable of only performing sedentary work on a regular and ongoing basis."  Pl.'s Brief (Doc. #12) at 9.

Dr. Anderson's testimony, as set forth above, is clear and speaks for itself.  Dr. Anderson, having reviewed the evidence concerning Plaintiff's obesity and other impairments, determined that Plaintiff's limitations permit him to perform "light work with a sit/stand option and/or sedentary work."  Plaintiff does not explain how Dr. Anderson's

9

testimony supports the conclusion that he cannot "fulfill the physical requirements associated with 'light' work." Dr. Anderson's finding that Plaintiff's RFC also encompasses sedentary work does not somehow effect a limitation on Plaintiff's aptitude for light work. Rather, the regulations dictate that a claimant capable of performing light work is also capable of sedentary work. 20 C.F.R. § 404.1567(b).

Both Dr. Anderson and the ALJ took special note of evidence establishing Plaintiff's obesity and relied upon such evidence in formulating Plaintiff's RFC. Moreover, substantial evidence in the record supports the ALJ's ultimate RFC determination, including the physical residual functional capacity assessment (Tr. 288-95) which was based largely on Dr. Colley's consultative examination (Tr. 281-87), consultative examiner Dr. Babb's opinion that Plaintiff does not suffer "any specific disabling conditions" but "should not be doing heavy, strenuous manual labor" (Tr. 302-03), the lack of any physician opinion specifically supporting a finding of disability,[6] and Dr. Anderson's opinion, in view of all the medical evidence, that Plaintiff is not disabled (Tr. 43). Thus, Plaintiff's contentions that the ALJ failed to consider Plaintiff's obesity and that the ALJ's RFC determination is not supported by the record and are without merit.

## B.    The ALJ's treatment of the opinion of Dr. Patel.

Plaintiff claims that "the ALJ erred by failing to afford adequate weight to Dr. Patel,

---

[6]     The Court will discuss the opinion of Dr. Patel, purported to be Plaintiff's treating physician, below. It is sufficed for present purposes to note that Dr. Patel's opinion, despite the import given it by Plaintiff, does not support a finding of disability.

[Plaintiff's] treating physician." Pl.'s Brief (Doc. #12) at 10. Plaintiff asserts that Dr. Patel opined that "it would be necessary for [Plaintiff] to take work only intermittently or to work less than a full schedule as a result of his condition. He also determined [Plaintiff's] impairments to be chronic in nature and can only work 'per his comfort level.' Dr. Patel also reported that [Plaintiff] may be absent from work for treatment and that he may require assistance due to his serious health condition." Pl.'s Brief (Doc. #12) at 10. Plaintiff asserts that it was error for the ALJ to not afford Dr. Patel's opinion controlling weight while, instead, affording significant weight to the opinion of the non-treating physician, Dr. Anderson. Plaintiff also alleges reversible error due to the ALJ's purported failure to "provide any reasons whatsoever for his rejection of Dr. Patel's opinion." Pl.'s Brief (Doc. #12) at 12. Defendant maintains that the ALJ implicitly rejected Dr. Patel's opinion and that decision is supported by substantial evidence. Def.'s Brief (Doc. #13) at 10.[7]

Dr. Patel prepared a "Certification of Health Care Provider" in June of 2007 in which Dr. Patel answered numerous questions about Plaintiff's condition. Tr. 310-312. The "Certification" appears to have been prepared for purposes unrelated to Plaintiff's disability

---

[7]     Defendant also asserts that it is at least unclear whether Dr. Patel qualifies as a treating physician. Def.'s Brief (Doc. #13) at 10. "A treating source is defined as the claimant's own physician or psychologist who has provided the claimant with medical treatment and evaluation, and who has had an ongoing relationship with the claimant." *Pettus v. Astrue*, 226 F. App'x 946, 949 (11th Cir. 2007). In this case, the record reveals that Dr. Patel saw Plaintiff on at least four occasions between March and August of 2006 (Tr. 277, 272, 257, & 232), and that he rendered the opinion relied upon by Plaintiff in June of 2007 (Tr. 309-312). Plaintiff's relationship with Dr. Patel was based on his need for treatment, not to "obtain a report in support of [the claim] for disability." *Id.* Thus, for purposes of this opinion, the Court assumes that Dr. Patel is Plaintiff's treating physician.

proceedings, as it pertains to Plaintiff's wife's request for "family medical leave." Tr. 309. In any event, Dr. Patel's "Certification" ultimately conveys his belief that Plaintiff is "presently incapacitated" "off and on lasting for 1-3 weeks," and that Plaintiff "can do work as per his comfort level." Tr. 310-311.[8] The ALJ specifically discusses Dr. Patel's "Certification" in his opinion (Tr. 20) but does not explicitly articulate what weight he afforded Dr. Patel's opinion in making his disability determination.

When confronted with the opinion of a claimant's treating physician, the ALJ must afford it substantial and considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Bliss v. Comm'r of Soc. Sec.*, 254 F. App'x 757, 758 (11th Cir. 2007) ("An ALJ may reject the opinion of a treating physician, which ordinarily receives substantial weight, where 'good cause' is established."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

---

[8]     It is questionable, given the context in which Dr. Patel's opinion was rendered, whether the "Certification" should properly be considered a probative opinion about Plaintiff's disability status. The origin and purpose of the "Certification" reasonably militates against treating it as probative evidence of Plaintiff's disability status entitled to treating-source deference because, based on the record before the Court, it can not be said that Dr. Patel appreciated that it would be used as such evidence. Moreover, it is even questionable whether the ALJ actually "rejected" Dr. Patel's opinion. Dr. Patel did not completely discount any ability for Plaintiff to perform work and it is for the ALJ only to craft a RFC formulation that recognizes Plaintiff's however-limited ability to perform work. However, to the extent Dr. Patel deemed Plaintiff incapacitated for periods of up to weeks at a time, such opinion is tantamount to saying that Plaintiff is disabled within the meaning of the guidelines. Accordingly, for purposes of this opinion, the Court assumes that the ALJ did reject Dr. Patel's opinion.

*Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 2008 WL 4962696 at *1 (11th Cir. Nov. 21, 2008).

"The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight"). Similarly, when deciding a claim of disability, the ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 Fed.2d 731, 735 (11th Cir. 1981). However, in certain circumstances, the ALJ's failure to strictly comply with this requirement may be deemed harmless error. *Caldwell v. Barnhart*, 261 Fed. App'x 188, 190 (11th Cir. 2008) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's

13

decision will stand.") (citations omitted); *Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir. 2006) (recognizing such harmless error analysis in context of failing to address treating source opinion).  Courts have generally found that an ALJ's failure to state what weight is afforded a particular piece of medical opinion evidence is harmless when the ALJ has relied upon other opinion evidence which is consistent with the omitted evidence or the omitted opinion is consistent with the ALJ's ultimate findings.  *See, e.g.*, *id.* at 191; *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005).  Other courts have recognized that the ALJ's failure to specify the weight given particular medical evidence might be considered harmless when "the Commissioner has met the goal of [20 C.F.R.] § [404.]1527(d)(2) - the provision of the procedural safeguard of reasons - even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006).  Under this rationale, the ALJ achieves the goal established by the regulations, without formal compliance, by providing sufficient reasons for the rejection of the omitted opinion by indirectly attacking its "supportability" or "consistency" with the record as a whole.  *Id.*

Under circumstances similar to those inhering in this case, the Eleventh Circuit appears to have recognized that such "implicit" rejection of treating source opinion evidence is viable provided that the ALJ articulates the reasons for affording the omitted opinion less weight and such reasons are supported by the record.  *Snyder v. Comm'r of Soc. Sec.*, 2009 WL 1492653 at *4 (11th Cir. 2009) ("Here, the ALJ did not specify expressly the weight given to Dr. Oliverio's [the claimant's treating physician] opinion.  The most the ALJ said

14

is that he was giving greater weight to Dr. Bhatia's opinion.  If that implicitly meant that he gave less weight to Dr. Oliverio's opinion, then the ALJ failed to articulate clearly the reasons for giving less weight to his opinion.  This problem alone requires reversal."); *see also Miller*, 182 F. App'x at 964.  Thus, although the ALJ failed to clearly state what weight he attributed to Dr. Patel's opinion, his implicit rejection of such opinion is appropriate if he has clearly stated the reasons supporting such rejection, and those reasons fit within the criteria described in *Phillips* and are supported by substantial evidence.

    In this instance, the Court finds that the ALJ clearly articulated the reasons for his implicit rejection of Dr. Patel's opinion and that those reasons are supported by substantial evidence.  In his opinion, the ALJ set forth a meticulous review of the available evidence (Tr. 17-21), including Dr. Patel's "Certification," and ultimately concluded that the evidence does not support the opinion of incapacitation rendered by Dr. Patel.   Substantial evidence supports this decision, including the physical residual functional capacity assessment (Tr. 288-95) which was based largely on Dr. Colley's consultative examination (Tr. 281-87), consultative examiner Dr. Babb's opinion that Plaintiff does not suffer "any specific disabling conditions" but "should not be doing heavy, strenuous manual labor" (Tr. 302-03), and Dr. Anderson's opinion, in view of all the medical evidence, that Plaintiff is not disabled (Tr. 43).  Moreover, it appears that Dr. Patel's opinion is conclusory, as the "Certification" does not provide an explanation for how or why Plaintiff's impairments cause the

"incapacity" opined by Dr. Patel.[9]  Furthermore, the "Certification" does not find objective support in Dr. Patel's own treatment records.  Dr. Patel's treatment notes in the record indicate the following: that he saw Plaintiff as a "walk in" on March 7, 2006, asking for a refill on his medications (Tr. 277); that he saw Plaintiff again on March 16, 2006, as a walk-in complaining of a "skin nodule" on his cheek (Tr. 272); that he saw Plaintiff again on April 25, 2006, as a walk-in complaining of pain in his legs (Tr. 257); and that he saw Plaintiff on August 28, 2006, and treated him for a possible eye infection (Tr. 232).  There is simply nothing in Dr. Patel's treatment history with Plaintiff to support the sweeping conclusion that Plaintiff is "incapacitated" due to his impairments.  While other evidence in the record corroborates the impairments listed by Dr. Patel on the "Certification," nothing in the record reveals that Dr. Patel specifically has treated Plaintiff for those impairments and, as indicated in the medical evidence reviewed by the ALJ, while those impairments are severe, they are not disabling.  Given all of the above, the ALJ did not err in failing to afford Dr. Patel's "Certification" controlling weight, and any error by the ALJ in failing to explicitly state how much weight he afforded Dr. Patel's opinion was harmless.

**C.    The ALJ's application of the "pain standard" and his treatment of Plaintiff's complaints about pain.**

Plaintiff contends that the ALJ erred in his application of the "pain standard" to

---

[9]       This lack of an explanation is understandable, considering, again, that the "Certification" was prepared for purposes other than rendering an opinion about Plaintiff's disability status in the context of Social Security proceedings.

Plaintiff's claim about the disabling effects of his pain because he failed to "provide 'specific reasons' for discrediting the testimony provided by [Plaintiff]" and "failed to articulate a basis grounded in evidentiary support[] indicating why [Plaintiff's] physical impairment failed to produce the level of pain, limitations from the pain, and inability to stand, walk or sit as reflected in his testimony."  Pl.'s Brief (Doc. #12) at 15.  Defendant asserts that the ALJ's "decision to discount Plaintiff's testimony is supported by substantial evidence." Def.'s Brief (Doc. #13) at 14.

The Eleventh Circuit has articulated its "pain standard," governing the evaluation of a claimant's subjective testimony about pain, as follows:

> "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  The ALJ evaluates the "claimant's subjective testimony of pain" only after the claimant satisfies the first and one of the alternate portions of the second prong of the pain standard.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Eleventh Circuit has also held that, "in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Id.* at 1561.  Importantly, it is only evidence of the underlying condition which could reasonably be expected to cause pain, not evidence of actual pain or its severity, which must

be presented by the claimant to satisfy the "pain standard." *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991); *see also Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986); *Hill v. Barnhart*, 440 F.Supp.2d 1269, 1272-73 (N.D. Al. 2006) (quoting *Elam*, 927 F.2d at 1215). Where the ALJ proceeds to consider the claimant's subjective testimony about pain, the ALJ's decision to reject or discredit such testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Finally, if the ALJ determines to discredit subjective pain testimony and such testimony is crucial to the claimant's assertion of disability, the ALJ "must articulate specific reasons for questioning the claimant's credibility." *Id.*

At the hearing before the ALJ, Plaintiff testified about "back pain" he attributes to his "sciatic nerve" (Tr. 33, 42), blood pressure problems (Tr. 33-34), and angina and chest pains (Tr. 34-35, 36, 43). Plaintiff also testified about the limitations these pains cause him in daily activities. Tr. 35-36, 42. Plaintiff stated that, at the time of the hearing, his chest pain was not problematic, but that "if I try to exert myself then I have angina pain." Tr. 42. He also stated that, at the time of the hearing, his back was "throbbing," that it has bothered him essentially every day for the last five years, and "the more I try to push myself, the worse it gets." Tr. 42.

Upon reviewing the record, the ALJ identified several underlying medical conditions and determined that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning

18

the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 21. Thus, while the ALJ found that Plaintiff passed through the threshold of the "pain standard," the ALJ ultimately rejected his subjective testimony about the severity of his pain. Accordingly, the ALJ was required to "articulate specific reasons for questioning the claimant's credibility" and those reasons must be supported by substantial evidence.

The ALJ provided numerous reasons for his decision to discredit Plaintiff's subjective pain testimony, including: 1) the lack of objective evidence supporting Plaintiff's testimony about limitations in his daily activities; 2) the difficulty of attributing Plaintiff's limitations to his impairments, rather than other reasons, given the "relatively weak medical evidence;" 3) Plaintiff's reliance of largely "routine and/or conservative" treatment for his pain; 4) Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing;" and 5) the lack of definitive and reliable expert medical opinion supporting such subjective limitations. Tr. 21.

Substantial evidence supports the ALJ's credibility determination because, as discussed in the ALJ's opinion and previously in this opinion, Plaintiff's subjective complaints about his pain "were not entirely credible when compared with the objective medical evidence in the record." *George v. Astrue*, 2009 WL 1950266 at *2 (11th Cir. July 8, 2009). *See* Tr. 18-19, 281-287, & 298-308. Additionally, the record supports the ALJ's observation about Plaintiff's reliance on mostly conservative treatment for his pain. Tr. 42-43. Moreover, the ALJ's "findings based upon his observation and assessment of

19

[Plaintiff's] demeanor" is afforded deference on review and is one factor, "among other criteria," properly considered by the ALJ in his credibility determination. *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985). Finally, as discussed above, the record is devoid of reliable expert opinion evidence lending any corroboration to Plaintiff's allegations of disabling pain. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's subjective allegations about pain are less than wholly credible.

## VI.  CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 19th day of October, 2009.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

20